**CRAWFORD CAPITAL CORPORATION,**
Plaintiff,

v.

**BEAR SOLDIER DISTRICT, and any of its citizens and residents,**
Defendant.

**No. A1–05–78.**

United States District Court,
D. North Dakota,
Southwestern Division.

June 29, 2005.

Kent M. Morrow, Severin & Ringsak, Bismarck, ND, for Plaintiff.

## ORDER DENYING PLAINTIFF'S MOTION FOR EX PARTE RESTRAINING ORDER

Hovland, Chief Judge.

Before the Court is the Plaintiffs' Motion for An Ex Parte Restraining Order (Docket No. 1) and Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 2). Both of the motions were filed on June 27, 2005. For the reasons set forth below, the Court denies the Plaintiff's Motion for Ex Parte Restraining Order and reserves ruling on the Motion for a Preliminary Injunction pending a response by the Defendant.

### I. BACKGROUND

The plaintiff, Crawford Capital Corporation (Crawford Capital), is seeking injunctive relief in the form of an Ex Parte Temporary Restraining Order and injunction "restraining and prohibiting Bear Soldier District and any of its citizens, residents or agents from interfering with the removal of the said house off of the property of Sonja and Steven Willard." Crawford Capital contends that it is the owner of a housing unit described as "the Sonja Willard wood housing unit." The house is located on fee land on the Standing Rock Indian Reservation. Crawford Capital contends that it became the owner of the house pursuant to an "Asset Purchase Agreement" with Bear Soldier Industries dated December 30, 2002. The purchase agreement was signed by Gary Minard on behalf of Bear Soldier Industries and by Paul D. Crawford on behalf of Crawford Capital. However, Crawford Capital also asserts in its pleadings that Pinto Spirit Development [1] sold the house to Sonja and

---

1. The motions filed by the Plaintiff do not explain how or whether Pinto Spirit Development is related to either Bear Soldier Industries or Crawford Capital.

Steven Willard on December 18, 2002,— prior to the purchase agreement. In addition, the Bear Soldier District also claims ownership of the house pursuant to a Tribal Court Judgment dated February 14, 2003.

Crawford Capital states that on March 7, 2005, the Willards requested that the house be moved from their property.[2] According to Crawford Capital, it agreed to move the house and hired Art Jochim House Moving. However, in the May 20, 2005, Tribal Court Order "Denying Removal of Septic Tank and House," Tribal Judge White Temple–Gipp stated that Alvin Bull Bear claimed he was employed by Robert Stinsky of Minneapolis, Minnesota to move the house. To further complicate this matter, the Petition for Ex Parte Temporary Restraining Order filed by the Bear Soldier District in Standing Rock Tribal Court on April 11, 2005, states that Alvin Bull Bear had hired an individual named "Mr. Lund" to move the house and that Bull Bear was acting as an agent for Pinto Spirit Industries. Crawford Capital also asserts that the Bureau of Indian Affairs (BIA) police have "refused to permit the orderly removal of the house off of the property of the Willards due solely to the May 20, 2005, Order and/or Ex Parte Petition." Thus, the pleadings on file in federal court reveal that no less than seven persons or entities claim some ownership interest in the house.

The Court notes that in neither of the Tribal Court matters referenced by Crawford Capital in its motions for injunctive relief is Crawford Capital named as a party. In the May 20, 2005, Tribal Court Order Denying Removal of Septic Tank and House, the caption reads *"Sonja Williard v. Alvin Bull Bear, AKA Pinto Spirit*

*Inc."* In the April 11, 2005, Petition for Ex Parte Temporary Restraining Order filed by the Bear Soldier District the caption reads *"Bear Soldier District v. Alvin Bull Bear Agent for Pinto Spirit Development and Gary Minard, Pinto Spirit Development, IQ Fund, et al."* Needless to say, it is less than clear who actually owns the house in question and even less clear are the chronology of events which led up to this nightmare.

## II. LEGAL DISCUSSION

■ Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a temporary restraining order should be issued, the Court must look to the specific facts shown by affidavit(s) to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In determining whether preliminary injunctive relief should issue, the Court is required to consider the factors set forth in *Dataphase Systems, Inc., v. C.L. Sys. Inc.,* 640 F.2d 109, 114 (8th Cir.1981) *(en banc ).* The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase Systems, Inc. v. C.L. Sys. Inc.,* 640 F.2d 109, 114 (8th Cir.1981) *(en banc ).* We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal

---

**2.** Crawford Capital's assertion that the Willard's wished to have the house moved is contradicted by the fact that Sonja Willard was the petitioner in Tribal Court seeking a temporary restraining order to halt the removal of the septic tank and house by an individual known as Alvin Bull Bear.

premise." *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554, 556 (8th Cir.1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994). *Pottgen v. Missouri State High School Activities Association,* 40 F.3d 926, 929 (8th Cir.1994).

The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. *Baker Electric Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.,* 871 F.2d 734, 737 (8th Cir.1989) (*en banc* ). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Electric Co-op,* 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corporation v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir. 1987)).

The Court has carefully reviewed the scant and confusing documents presented by Crawford Capital in support of the motions for injunctive relief. Crawford Capital has further hampered the Court's ability to effectively review this matter because no complaint was filed in conjunction with the request for injunctive relief.[3] Based on the lack of evidence presented to the Court, the Court is unable to discern what Crawford Capital's claim(s) are, let alone determine the probability of their success on the merits or any of the other Dataphase factors to be considered.

The Court is also not persuaded by Crawford Capital's claims of irreparable harm. As previously noted, it is entirely unclear who actually owns the house in question. Crawford Capital's own recitation of the facts is inconsistent—at one point stating that it purchased the house from Bear Soldier Industries on December 30, 2002, and at another point stating that Pinto Spirit Development sold the home to the Willards on December 18, 2002. The Court also notes that counsel for Crawford Capital has not certified to the Court "the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required." Fed. R. Civ. Pro. 65(b)(2).

The Court finds that Crawford Capital has not sustained its burden and has failed to establish the necessity of a temporary restraining order. The Court DENIES Crawford Capital's Motion for a Temporary Restraining Order. (Docket No. 1).

III. CONCLUSION

Crawford Capital's Motion for an Ex Parte Temporary Restraining Order (Docket No. 1) is DENIED. Crawford Capital is directed to serve the Defendant, Bear Soldier District, with a copy of all documents filed in this matter and the enclosed certified copy of this order. Upon completion of service, Crawford Capital is directed to file a certificate of service with the Court.

The Court will reserve ruling on Crawford Capital's Motion for a Preliminary Injunction until Bear Soldier District has had an opportunity to submit a response to the motion. Bear Soldier District shall have ten (10) days from the date Crawford Capital effect's service of the motion in this matter to file a response. Upon receipt of Bear Soldier District's responsive pleading, the Court will give consideration to scheduling a hearing on the matter to

---

**3.** The Court notes that Crawford Capital's "Notice of Motion and Motion for a Temporary Restraining Order and Preliminary Injunction" (Docket No. 2) references a "Complaint for Declaratory Relief;" however, the Court did not receive such a pleading.

address the litany of unanswered questions that remain.

SO ORDERED.